J-S65004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARMELO RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 738 MDA 2018 |

Appeal from the PCRA Order April 5, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001581-2014

BEFORE: SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY SHOGAN, J.: **FILED: JANUARY 11, 2019**

Appellant, Carmelo Rodriguez, appeals from the order denying his

petition for collateral relief filed pursuant to the Post Conviction Relief Act

("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court summarized the factual and procedural history of this

case as follows:

> [Appellant] was charged with two counts of Aggravated
> Assault[1] relating to an incident that occurred on August 4, 2014.
> [Appellant] waived the preliminary hearing on September 18,
> 2014, and the formal arraignment on October 25, 2014. The
> matter first went to jury trial, which ended in a mistrial on April
> 13, 2015. A second jury trial was held on June 4, 2015, resulting
> in [Appellant] being found guilty on both counts of Aggravated
> Assault. Our November 30, 2015 Opinion adequately sets forth
> the facts reflected at trial as follows:
>
> > [1] 18 Pa.C.S.A. § 2702(a)(1); 18 Pa.C.S.A.
> > § 2702(a)(4).

Michael Morris (hereinafter "Morris"), a friend of Randy Wolfe (hereinafter "victim") testified for the Commonwealth. On August 4, 2014, Morris and the victim were at the William Penn bar (hereinafter "bar") in Lebanon, having a couple of drinks. Morris stated that when they were at the bar, the victim, who is very outgoing, was socializing with several people, playing games and performing magic tricks. At a later point in the evening, Morris heard a commotion by the door and saw the victim with three guys; Frank Velez (hereinafter "Velez"), [Appellant] and Dennis Kreider (hereinafter "Kreider").

Morris followed the group outside and saw the victim, [Appellant] and Velez walking up the street; the victim and Velez were arguing. Morris stated that when [Appellant] walked behind a tree, he bent down where loose bricks were present. At some point during the verbal altercation between the victim and Velez, the victim spit on [Appellant]. The victim told [Appellant] it was an accident and Morris stated the victim went to wipe the spit off of [Appellant]. When the victim went to wipe the spit off of [Appellant], [Appellant] hit the victim and the victim fell straight back. When Morris saw the victim get hit, he punched [Appellant], knocking him down. [Appellant] and his two friends immediately got in their car and left.

Kreider testified that he and [Appellant] have been friends for approximately 30 years. When Kreider, Velez and [Appellant] were in the bar, Kreider saw Velez hit the victim in the face one time and heard the victim scream to Velez that Velez "hit like a girl." Thereafter, the bartender told [Appellant] and Velez to leave the bar. Kreider followed them outside, at which point [Appellant], Velez and the victim were already walking away down the street, with [Appellant's] back towards Kreider.

Shortly after coming outside, Kreider witnessed [Appellant] make a "fighting motion," and then the victim's friend, Morris, punched [Appellant] in the face. Kreider, Velez and [Appellant] immediately headed to their car and left. As they were leaving,

- 2 -

Kreider heard a girl yell, "you pussy, you hit him with a brick." When Kreider asked [Appellant] in the car if [Appellant] hit the victim with a brick, [Appellant] replied, "I hit the nigger." However, Kreider did not see [Appellant] hit the victim with a brick.

Velez testified that during his time at the bar, he got into a physical altercation with the victim where he threw a few punches because the victim had gotten in Velez's face about a petty argument Velez was having with a third individual. Velez stated that he did not knock the victim over and that he didn't see any injuries besides "maybe a little blood on the side of his like lip or something" As Velez was trying to leave the bar, the victim was blocking Velez's way, until the bartenders forced the victim out of the way so Velez could leave.

When Velez went outside, the victim followed, wanting to continue the altercation that was started in the bar. At this point Velez stated "I was backing up and...his arms were flailing. He said he wanted to get into it with me. So as I was backing up and I was taking off my shirt and my jewelry and then in an instant hey, let's get out of here." Velez testified that he did not see the victim get hit or see the victim laying on the ground because after he took off his shirt and jewelry, his friend was telling Velez to leave. When Velez, Kreider and [Appellant] got into the car to leave, [Appellant] asked Velez to take the blame for what happened, but Velez did not know what had happened and did not want to take the blame for anything. The next morning, the police asked Velez to come in to talk about what occurred the previous night, and he came in to cooperate with the police.

* * *

The Commonwealth also presented stipulated medical testimony from Dr. John Kelleher, a neurosurgeon at the Penn State Milton Hershey Medical Center and Dr. Jessica Lighthall, an Otolaryngologist. Dr. Kelleher determined that the skull fractures suffered by the victim were caused by

- 3 -

blunt force trauma to the head, requiring a large amount of force to cause the injuries sustained.[2] Dr. Lighthall was on call the evening that the victim was transported to the Penn State Milton Hershey Medical Center and was needed to assist with the victim's injuries due to their complex nature. Dr. Lighthall's stipulated medical testimony closely mirrored Dr. Kelleher's testimony, specifically that the injury was caused by a blunt object and the injury is one that would require a significant amount of force.

> [2] Dr. Kelleher made the following post-operative diagnoses:
>
> 1. Comminuated frontal depressed skull fracture;
> 2. Subarachnoid hemorrhage;
> 3. Pneumocephalus;
> 4. Intraparenchymal hemorrhage;
> 5. Diffuse axonal injury;
> 6. Orbital wall fractures; and
> 7. Complex midface fractures which shifted the face to the right.

Amber Green, a Forensic DNA scientist working with the Pennsylvania State Police was qualified as an expert and testified in regards to the DNA samples taken from the brick, which was collected at the scene of the incident. Ms. Green opined that one DNA sample from the brick matched the DNA sample given by the victim. Ms. Green further opined that [Appellant] could not be included as a contributor to the DNA samples collected from the brick.

[Appellant] took the stand and testified that while he was at the bar on August 4, 2014, he saw Velez get into an argument with the victim and subsequently punch the victim twice in the face. [Appellant] stated that he tried to deescalate the situation while in the bar by getting between Velez and the victim. When they were outside, [Appellant] stated he just watched Velez and the victim and [sic] argue. After the victim spit on him, the victim reached out towards [Appellant]. The victim's action of

- 4 -

reaching out towards [Appellant] made [Appellant] feel threatened and he punched the victim in the face. [Appellant] did not see what happened to the victim after he punched him because he was hit from the side and then immediately left with Velez and Kreider.

[Appellant] was sentenced on August 19, 2015, to an aggregate sentence of six (6) to twenty (20) years in a State Correctional Facility. [Appellant] filed Post-Sentence Motions on August 31, 2015, which this court denied by Order dated December 4, 2015. [Appellant] appealed our decision and the Superior Court affirmed in a Memorandum Decision dated October 4, 2016.

[Appellant] filed a *pro se* PCRA Petition on December 2, 2016. This court appointed counsel to represent [Appellant] and a counseled Amended Petition was filed on January 23, 2017. . . . A PCRA hearing was conducted on December 21, 2017.

PCRA Court Opinion, 4/5/18, at 1-6 (internal citations omitted).

The PCRA court dismissed Appellant's PCRA petition on April 5, 2018,[1]

and Appellant filed his timely appeal on April 23, 2018. The PCRA court and

Appellant complied with Pa.R.A.P. 1925.[2]

Appellant presents the following issue for our review: "Did the Trial

Court err in ruling that trial counsel was not ineffective for failing to interview

_____

[1] There is no indication in the record that the PCRA court provided Appellant with notice of its intent to dismiss his PCRA petition pursuant to Pa.R.Crim.P. 907. However, Appellant has not challenged this omission on appeal. The failure to challenge the absence of a Rule 907 notice constitutes waiver. ***Commonwealth v. Taylor***, 65 A.3d 462, 468 (Pa. Super. 2013).

[2] In an order filed pursuant to Pa.R.A.P. 1925(a) on June 26, 2018, the PCRA court stated that "we find that all errors lack merit and have been sufficiently addressed in our Order and Opinion filed April 5, 2018." Order, 6/26/18, at 1.

and call witnesses who were mentioned in discovery materials as having been at or near the crime scene where the alleged assault took place?" Appellant's Brief at 5.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. *Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.*

Appellant's issue raises claims of ineffective assistance of counsel.

> To prevail in a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987):  (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.

*Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011). With regard to the second, reasonable-basis prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). "A chosen strategy will not be found to have lacked a reasonable basis unless it is proven that 'an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006). "In order to meet the prejudice prong of

the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" ***Commonwealth v. Reed***, 42 A.3d 314, 319 (Pa. Super. 2012).

A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. ***Commonwealth v. Williams***, 863 A.2d 505, 513 (Pa. 2004). "The burden of proving ineffectiveness rests with Appellant." ***Commonwealth v. Rega***, 933 A.2d 997, 1018 (Pa. 2007).

Appellant argues that trial counsel was ineffective for failure to interview and subpoena for trial two witnesses: John Orner and Zachary Edwards. Appellant's Brief at 18. Appellant maintains that "it is clear that the testimony of both John Orner and Zachary Edwards offered a potential for success substantially greater than Attorney Judd's strategy of not interviewing them and not subpoenaing them for trial." ***Id.*** at 18.

> To establish that counsel was ineffective for failing to call a witness, Appellant must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. Failure to call a witness is not per se ineffective assistance of counsel, for such a decision implicates matters of trial strategy. It is Appellant's burden to demonstrate that trial counsel had no reasonable basis for declining to call . . . a witness.

***Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007) (internal citations omitted).

- 7 -

Herein, both John Orner and Zachary Edwards testified at the PCRA

hearing. We begin with the testimony provided by John Orner at that hearing,

as summarized by the PCRA court:

> At the PCRA hearing, [Appellant] first called John Orner to testify. Mr. Orner testified that he was at the William Penn Bar on August 4, 2014, when he observed a blonde guy and a man named Frank [Velez] swinging at each other as they were being pushed outside by a large group. Mr. Orner went outside where he saw the incident continue as Frank [Velez] took off his shirt and got ready to fight the blonde man and then he saw the blonde man drop. Mr. Orner stated that he saw a man in a blue t-shirt pick up a brick and come around and hit the blonde man in the head. After the blonde man went down, Mr. Orner saw three men run towards a car. Mr. Orner ran out to help the man who had been hit and took down the license plate number of the car the three men entered.

> When questioned by [Appellant's] counsel regarding inconsistencies between his testimony at the hearing and the police report, Mr. Orner stated that the statement he gave to police officers was consistent with his recollection of events at the hearing, but that the police officer was not paying attention to him. Mr. Orner testified that he was contacted by the District Attorney's office but not by [Appellant's] trial attorney and that he was never subpoenaed to testify at the trial.

PCRA Court Opinion, 4/5/18, at 6 (internal citations omitted).

In addressing Appellant's claim that trial counsel was ineffective for

failing to call Mr. Orner as a witness, the PCRA court determined:

> John Orner testified at the PCRA hearing that he was available to testify at trial, he would have testified had he been subpoenaed, and that, although he had spoken with the District Attorney regarding this matter, he had not been contacted by [Appellant's] trial counsel. Furthermore, Mr. Orner's statement had been included in the police report and [Appellant] testified that his review of the discovery revealed the same. Therefore, the first through fourth prongs are satisfied and we are left to

determine whether the absence of Mr. Orner's testimony at trial was so prejudicial as to deny [Appellant] a fair trial.

As the PCRA transcript revealed, Mr. Orner testified that he saw [Velez] and the victim begin arguing inside and the fight continued outside the bar. Once outside, Mr. Orner saw the two men getting ready to fight and then saw a man in a blue t-shirt pick up a brick. At the second jury trial, [Appellant's] blue t-shirt was entered into evidence and several people testified that [Appellant] was wearing a blue shirt on the evening of the incident. Furthermore, a video showing [Appellant] wearing a blue shirt was also entered into evidence and presented to the jury. [Appellant] attempts to persuade us that the trial attorney could have used Mr. Orner's testimony to impeach his statement recorded by police. We find this attempt unavailing.

When counsel has chosen a particular course of strategy and tactic with a reasonable basis to effectuate the client's interests, counsel's assistance is generally deemed effective. Com. v. Miller, 819 A.2d 504 (Pa. 2002). Furthermore, hindsight comparison of trial strategy with alternatives not employed must conclude that the alternative strategy not employed would have offered a greater potential for success. *Id.* at 517. [Appellant] has failed to prove that trial counsel's strategy was less successful than had she presented Mr. Orner's testimony, nor has he shown that the absence of Mr. Orner's testimony so prejudiced him as to deny him a fair trial.

PCRA Court Opinion, 4/5/18, at 10-11 (some internal citations omitted).

We agree with the PCRA court's determination. If Mr. Orner had testified at trial, he would have stated that he saw an individual wearing a blue t-shirt hit the victim in the head with a brick. N.T., 12/21/18, at 4-8. As noted by the PCRA court, other testimony at trial would have established that Appellant was wearing a blue t-shirt during the incident. PCRA Court Opinion, 4/5/18, at 10-11. Accordingly, the absence of Mr. Orner's testimony at trial did not prejudice Appellant. In fact, introduction of Mr. Orner's testimony at trial

would have impacted Appellant's position negatively, as it was evidence reinforcing the conclusion that Appellant was guilty of the crimes charged. Thus, Appellant has failed to establish that trial counsel was ineffective for failing to interview Mr. Orner and to call Mr. Orner as a witness at trial.

We now consider the testimony that Zachary Edwards would have provided at trial. The PCRA court aptly summarized Mr. Edwards's testimony at the PCRA hearing as follows:

> Mr. Edwards, who was present for Mr. Orner's testimony, stated that "[p]retty much the same thing [Mr. Orner] said, the altercation that happened. They all went outside. I didn't go outside. I didn't follow them. I watched through the window from what I could see." Mr. Edwards testified that the victim, Randy, was his boss and that he remembered an individual, later identified as Frank Velez, approaching him earlier in the evening and asking whether he had a problem with him and whether he wanted to go outside and fight. Mr. Edwards continued that he saw the victim, [Appellant] and [Velez] arguing and moving around outside, but that he couldn't see them clearly. Mr. Edwards admitted that he did not see the victim get hit or who picked up the brick, but just saw the victim fall to the ground. Finally, Mr. Edwards saw [Velez] hit the victim two or three times inside the bar, but did not see what happened outside the bar.
>
> Mr. Edwards admitted that he had not been contacted by the District Attorney or [Appellant's] trial counsel and did not receive a subpoena to testify at trial. However, had he been subpoenaed, Mr. Edwards would have testified consistent with his testimony at the hearing. On re-direct, Mr. Edwards admitted again that he did not see [Appellant] strike the victim at all.

PCRA Court Opinion, 4/5/18, at 6-7 (internal citations omitted).

In addressing Appellant's claim of ineffective assistance of counsel for failure to interview Mr. Edwards or call Mr. Edwards as a witness at trial, the PCRA court provided the following analysis:

Mr. Edwards testified that he was available and would have testified if subpoenaed, and admitted that he was never contacted by [Appellant's] trial attorney. Again, we are faced with a determination of the prejudice upon [Appellant's] ability to be granted a fair trial with the absence of Mr. Edward's testimony.

Mr. Edwards testified that the events occurred in substantially the same way as Mr. Orner described. Mr. Edwards testified that he told police that he saw [Velez] take off his white shirt and that [Velez] was the person who hit the victim, though he stated that this was while the two men were fighting inside the bar. Mr. Edwards later identified [Velez] from a photo array. However, Mr. Edwards admitted that he was inside the bar and did not clearly see the events that occurred outside the bar. Additionally, Mr. Edwards denied seeing who actually picked up the brick or who hit the victim with the brick.

When applying the final prong of the prejudice suffered by [Appellant] in the absence of Mr. Edwards's testimony, we find [Appellant's] proof to be lacking. While [Appellant] contends that Mr. Edwards' testimony would have provided support for the theory that someone other than [Appellant] committed the crime, we find this argument lacking. We fail to see how the absence of Mr. Edwards' testimony that he didn't see who committed the crime to be prejudicial to [Appellant's] right to a fair trial.

PCRA Court Opinion, 4/5/18, at 11-12.

We agree with the PCRA court's determination. Mr. Edwards's testimony, had it been presented at trial, would not have had any impact on the conclusion regarding Appellant's guilt. Mr. Edwards testified that he did not see who picked up the brick, or who hit the victim with the brick. N.T., 12/21/18, at 14-15. Thus, the absence of Mr. Edwards's testimony at trial did not prejudice Appellant. Accordingly, Appellant has failed to establish that trial counsel was ineffective for failing to interview Mr. Edwards or call him to testify at trial.

Appellant further asserts that "where there is a limited amount of evidence of guilt, it is *per se* unreasonable not to attempt to investigate and interview known eyewitnesses in connection with defenses that hinge on the credibility of other witnesses," pursuant to **Commonwealth v. Dennis**, 950 A.2d 945 (Pa. 2008). Appellant's Brief at 24. Appellant maintains that because there is no direct evidence that he hit the victim with a brick and only circumstantial evidence supports Appellant's convictions, pursuant to **Dennis**, it was "per se unreasonable for Attorney Judd not to make any attempt to investigate and interview Zachary Edwards and John Orner." **Id.** at 24-25.

The PCRA court addressed this claim in its April 5, 2018 opinion, and concluded as follows:

> At trial, [Appellant's] trial counsel presented two witnesses– [Appellant] and a Forensic DNA analyst with the Pennsylvania State Police who performed analysis on the evidence in this case. The Forensic DNA analyst provided testimony to the effect that while the victim's DNA was found on the brick, [Appellant's] DNA was not. [Appellant] testified on his own behalf refuting the testimony of other witnesses brought by the Commonwealth and, while admitting that he punched the victim, denied hitting the victim with the brick.

> While the Supreme Court in **Dennis** did state that it is *per se* unreasonable not to interview known eye witnesses where defenses hinge on the credibility of other witnesses and there is a limited amount of evidence of guilt, the Court also stated that such does not support "the proposition that such an omission is *per se* prejudicial." [**Dennis**, 950 A.2d at 960-961]. In order to reach a determination of prejudice, [Appellant] must prove that there was a reasonable probability that the outcome of the trial would have been different had counsel interviewed and/or called Mr. Orner and Mr. Edwards to the stand. We cannot make such a determination based on the testimony of the witnesses at the PCRA hearing. Neither witness provided any further testimony

- 12 -

affirming that [Appellant] was not the person who picked up the brick and hit the victim. In fact, while Mr. Edwards testified that he could not clearly see the events outside the bar, Mr. Orner testified that he saw the man in the blue t-shirt pick up the brick. If, as [Appellant] has suggested, trial counsel would have placed Mr. Orner on the stand, only to then refute the credibility of his testimony and statements to police, we fail to see how this would have been helpful to [Appellant].

PCRA Court Opinion, 4/5/18, at 12-13.

The PCRA court's determination is supported by the evidence of record and is free of legal error. Thus, Appellant is entitled to no relief on his claims of ineffective assistance of trial counsel.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/11/2019

- 13 -